J-S59042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                           :         PENNSYLVANIA
               Appellant            :
                                             :
                                             :
              v.                   :
                                             :
                                             :
LANCE SIMPSON                      :      No. 1158 EDA 2018

Appeal from the Order Entered March 12, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004545-2017

BEFORE: GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                 **FILED DECEMBER 11, 2018**

The Commonwealth appeals from the order entered March 12, 2018, in the Delaware County Court of Common Pleas, granting the pretrial motion to suppress evidence filed by appellee, Lance Simpson.[1] On appeal, the Commonwealth argues the trial court erred when it concluded officers had no probable cause to arrest Simpson for driving under the influence of alcohol ("DUI"),[2] and related charges. For the reasons below, we reverse the order granting suppression of the evidence, and remand for further proceedings.

---

[1] Pursuant to Pa.R.Crim.P. 311(d), the Commonwealth properly certified in its notice of appeal that "the trial court's order will terminate or substantially handicap the prosecution." Notice of Appeal, 4/10/2018.

[2] 75 Pa.C.S. § 3802(a)(1).

The facts developed during the suppression hearing were summarized by the trial court as follows:

[O]n April 14, 2017 around 11:51PM, there were three telephone calls to 911 reporting an accident. Based upon those calls, the 911 center dispatched officers into Sector 2, Drexel Hill, for an accident, a hit and run, in the area of Woodland Avenue and [Burmont] Road. Upon arrival at the accident location a tire was found in the street as well as gouge marks in the roadway. The Court heard testimony that the gouge marks led north on [Burmont] Road. The callers to 911 provided a description of a silver pick-up truck missing a tire with sparks and flames coming from the vehicle. None of the 911 callers identified the race or gender of the individual driving the silver pick-up. The police officers followed the gouge marks to [Simpson's] driveway located at 2226 Steele Road. In the driveway[,] the police officers located a silver pick-up with heavy front end damage and with a missing tire. The officers testified that they knew the residence and that [Simpson] was known to drive a silver pick-up, as [he] was a fellow police officer.

As Lieutenant [Louis] Panagoplos was en route to 2226 Steele Road, he testified that he was approached by a neighbor who informed him "that I needed to check on [Simpson] to make sure he was okay." The neighbor informed the Lieutenant that [Simpson] was "standing in the driveway looking at his vehicle." This Court heard the testimony of Mr. [Adam] Stevenson, a neighbor of [Simpson] who spoke with one of the officers en route to [Simpson's] residence. Mr. Stevenson testified that the officer stopped him and asked if the vehicle belonged to Mr. Stevenson or if he knew whom the vehicle belonged to[.] Mr. Stevenson informed the officer that "he didn't want to know the answer to that [question]. And I said it belonged to [Simpson]." According to the testimony of Mr. Stevenson, the officer responded by putting his head on the steering wheel and saying that he was afraid that would be the answer. It was unclear to the Court if Mr. Stevenson is the same person who spoke with Lieutenant Panagoplos. This Court notes that if Mr. Stevenson is the same person who spoke with Lieutenant Panagoplos, then there is a discrepancy in the testimony between the two men. Mr. Stevenson [did] not testify as to where he observed [Simpson] and testified that the officer approached him whereas Lt.

- 2 -

Panagoplos testif[ied] that a neighbor approached him and that neighbor observed [Simpson] looking at the silver pick[-]up.

While at 2226 Steele Road, the officers saw no one in the driveway or on the property. The officers observed the silver pick[-]up backed into the driveway with the driver's side front tire missing, damage to the axel and damage on the curb. According to the testimony of the officers, the lights of the residence were on and they knew that the television on the first floor was on. The officers approached and knocked on the front door of the residence and there was no response. There was no testimony from the officers if they were aware of anyone else on the property or inside the residence. There was no testimony that [Simpson] was observed in the vehicle. There was no testimony that [the] motor vehicle was running or being operated at the time the silver pick[-]up was observed in the driveway of 2226 Steele Road.

Again, this Court heard conflicting testimony. Officer [William] Sides testified that he went to the rear of the residence and saw [Simpson] there. However, the testimony from Lieutenant Panagoplos was that he knocked on the front door of the residence for several minutes before [Simpson] appeared from the rear of the property. There was no testimony from Lieutenant Panagoplos that [Simpson] came from the rear of the property with Officer Sides.

Lieutenant Panagoplos was clear that [Simpson] did not appear to be injured. It was also clear that immediately upon seeing [Simpson], he was detained by the police officers and transported from the scene. [Simpson] had no keys on his person. There was no testimony that the registration of the motor vehicle was identified as belonging to [Simpson].

The officers' testimony that [Simpson] smelled of alcoholic beverages, that his speech was slurred, that he had bloodshot eyes, and that he was unsteady on his feet and had a staggering gait was provided by observations made after [Simpson] was detained.

Trial Court Opinion, 5/10/2018, at 2-5 (record citations omitted).

Simpson was charged with DUI (general impairment) and the summary offense of accidents involving damage to unattended property.[3]  On November 27, 2017, Simpson filed a pretrial motion to suppress, asserting he was arrested without probable cause.  The court conducted a suppression hearing on March 1, 2018.  Thereafter, on March 12, 2018, the trial court entered an order granting Simpson's motion, and suppressing "all physical evidence, of which includes blood, as well as any statements and police observations after [Simpson] was detained."  Order, 3/12/2018.  The Commonwealth filed a motion for reconsideration on March 22, 2018, which the court promptly denied.  This timely appeal followed.[4]

On appeal, the Commonwealth contends the trial court erred in concluding there was no probable cause to arrest Simpson for suspicion of DUI.  **See** Commonwealth's Brief at 7.  Rather, the Commonwealth insists the facts and circumstances known to the officers at the time of the arrest led to the "practical, common-sense conclusion that it was probable [Simpson] was driving his truck under the influence of alcohol while incapable of safe driving." **Id.** at 14.

---

[3] **See** 75 Pa.C.S. § 3745(a).

[4] On April 11, 2018, the trial court ordered Simpson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  On April 18, 2018, the court entered an amended order, directing the Commonwealth, who was the appealing party, to file a concise statement.  The Commonwealth complied with the court's directive and filed a concise statement on May 1, 2018.

- 4 -

Our standard of review of an order granting a defendant's motion to suppress evidence is well-settled:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Miller*, 2012 PA Super 251, 56 A.3d 1276, 1278–79 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Brown*, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).
>
> *Commonwealth v. Korn*, 139 A.3d 249, 252–253 (Pa. Super. 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted), *appeal denied*, 577 Pa. 701, 847 A.2d 58 (2004). Nevertheless, the suppression court's conclusions of law are not binding on an appellate court, and are subject to plenary review. *Commonwealth v. Johnson*, 969 A.2d 565, 567 (Pa. Super. 2009) (citations omitted).

*Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018).

It is axiomatic that "[a] police officer may detain an individual in order to conduct an investigation" when the officer has reasonable suspicion the individual is "is engaging in criminal conduct." *Commonwealth v. Young*, 904 A.2d 947, 957 (Pa. Super. 2006), *appeal denied*, 916 A.2d 633 (Pa.

2006). Reasonable suspicion is determined by consideration of the totality of the circumstances, and the "reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." **Id.** (quotation omitted). It is not limited to "only those facts that clearly indicate criminal conduct[, but r]ather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Id.** (quotation omitted).

The officer may subsequently develop probable cause to place the individual under arrest.

> "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." "Probable cause justifying a warrantless arrest is determined by the 'totality of the circumstances.'" Furthermore, "probable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.'"

**Commonwealth v. Williams**, 941 A.2d 14, 27 (Pa. Super. 2008) (internal citations omitted).

In the present case, the trial court concluded the officers did not have probable cause to arrest Simpson for DUI. The court emphasized that while it was "uncontroverted" the truck parked in Simpson's driveway "was the vehicle that was involved in a hit and run," there was no testimony that Simpson was the driver or "was in actual physical control of that silver pick-up prior to his arrest[,]" nor was there any testimony he was the registered

owner of the pick-up. Trial Court Opinion, 5/10/2018, at 7. The trial court distinguished those cases in which a person, not observed actually driving a vehicle, was, nevertheless, found to be the driver or in actual physical control of a vehicle for purposes of a DUI conviction.[5] **See id.** at 8 (citing cases). The trial court summarized its findings as follows:

> In this case, [Simpson] was not found asleep in the silver pick-up, was not standing next to or near the pick-up, was not sitting in a lane of traffic in the silver pick-up following an accident, nor was he near the pick-up in a location (like a restaurant or other establishment) which required him to drive to said location. Rather, in this case [Simpson] was observed coming from the rear of his residence. There was no testimony from any witness that identified [Simpson] as the driver, there was no testimony that [Simpson] held the keys to the silver pick[-]up in his hands.
>
> The uncontroverted testimony in this case is that a silver pick-up was involved in a hit and run, that the silver pick[-]up was sitting in [Simpson's] drive way, and that immediately upon making contact with [Simpson] he was handcuffed, then simply based upon the observations of his person, he was placed under arrest for driving under the influence and transported to the hospital. The uncontroverted testimony of the witnesses presented did not establish the identity of the driver of the silver pick-up. There was no investigation to determine whether or not [Simpson] had been operating the motor vehicle and was involved in a hit and run accident, there was no investigation to determine if anyone else was in the residence, on the property or had been in actual physical control of the motor vehicle or had operated the motor vehicle. Based upon the relevant case law this Court did not err in determining that there was no probable cause to arrest [Simpson]. This Court further determines that when the police entered [Simpson's] property and immediately put [Simpson] in

_____

[5] A person is guilty of DUI (general impairment) if he "**drive[s], operate[s] or [i]s in actual physical control** of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1) (emphasis supplied).

handcuffs that he was arrested and not detained and that the officers did not possess the requisite probable cause.

*Id.* at 8-9.

The Commonwealth contends, however, the trial court "misapplied by the law providing for deferential review of police probable-cause determinations." Commonwealth's Brief at 11 (footnote omitted). Specifically, it insists the trial court failed to consider the following "compelling circumstantial evidence[ - ] that a silver pick-up truck missing a tire fled from a collision, police followed a trail gouged in the road by the tireless wheel to [Simpson's] driveway, and that they found the intoxicated [Simpson] there with his damaged silver pick-up truck missing a tire." *Id.* at 14. Based upon this circumstantial evidence, the Commonwealth argues, "the police correctly made a practical, common-sense conclusion that it was probable [Simpson] was driving his truck under the influence of alcohol while incapable of safe driving." *Id.* We agree.

The trial court's findings rely heavily on the court's determination that the officers conducted no investigation at the scene, but rather, immediately placed Simpson in handcuffs and arrested him as soon as he appeared. *See* Trial Court Opinion, 5/10/2018, at 8-9. The court emphasized the absence of any testimony identifying Simpson as the driver of the pick-up, *see id.* at 7, and stated the officer's observations regarding Simpson's apparent intoxication (smell of alcohol, bloodshot eyes, slurred speech, unsteady gait), were made only after Simpson was "detained." *Id.* at 5. The clear implication

in the court's opinion, is that the officers arrested Simpson before even determining whether he was intoxicated.

However, the testimony from the suppression hearing does not support this sequence of events. In fact, upon our review of the transcript, we find no mention of when, if at all, Simpson was handcuffed on the night in question. Rather, both Officer Sides and Lieutenant Panagoplos testified that after Simpson appeared from the rear of the home, he was "detained." *See* N.T., 3/1/2018, at 28-29, 50-51. Lieutenant Panagoplos stated that when Simpson appeared, he asked Simpson if he was okay. *See id.* at 40. The lieutenant testified:

> At that point I observed him, I listened to his speech pattern. I observed that his speech was slurred. I could smell an odor of an alcoholic beverage coming from his person. And that he was unsteady on his feet.
>
> … [Simpson was a] little more dishelved than he would normally be. He's pretty clean-cut as you can see. And that night he seemed to be a little just out of sorts.

*Id.* at 41-42. Based on his observations, Lieutenant Panagoplos concluded Simpson "was intoxicated[ and] had driven the vehicle." *Id.* at 42. Under cross-examination, the lieutenant agreed to the following: (1) Officer Sides detained Simpson when he appeared from the rear of the residence; (2) after that time, the lieutenant "made the observations" regarding Simpson's purported intoxication; and (3) "at that point based on everything … [Lieutenant Panagoplos] arrested [] Simpson for suspected DUI[.]" *Id.* at 50-51. Under the relevant case law, the officers were permitted to briefly detain

Simpson to investigate when they found his damaged pick-up truck in his driveway just 15 to 20 minutes after the initial 911 call regarding the hit and run.[6] The testimony reveals the officers observed Simpson displayed signs of intoxication as soon as he appeared before them. See N.T., 41-42, 50-51. Moreover, there was no testimony Simpson was immediately put in handcuffs and arrested, before he displayed signs of intoxication.

While there was no direct evidence presented that Simpson was driving the pick-up at the time of the collision, the circumstantial evidence was sufficient to supply probable cause for his arrest. Here, within minutes of the hit and run, Officer Sides followed the gouge marks in the road from the accident scene to Simpson's nearby residence. Officer Sides knew Simpson, a fellow officer, lived there and drove a silver pick-up. *See id.* at 36. In fact, as soon as he recognized the vehicle was Simpson's, Officer Sides "notified [his] supervisor," Lieutenant Panagoplos. *Id.* at 22. *See id.* at 26 (Officer Sides explained, "[W]hen I saw the vehicle I recognized it and backed up and notified my supervisor."). As the lieutenant arrived, a neighbor of Simpson's told the officer that he needed to check on Simpson because Simpson was standing in his driveway looking at his vehicle. When the officers finally

---

[6] *See* N.T., 3/1/2018, at 42-43. Although the trial court notes there was no testimony Simpson was the registered owner of the pick-up truck, Lieutenant Panagoplos testified that when he met Officer Sides near the scene, the officer told him both the vehicle and the residence belonged to Simpson. *See id.* at 36. The lieutenant also stated a neighbor of Simpson's approached him, and told him he needed to "check on [Simpson]" because he was "standing in the driveway looking at his vehicle." *Id.* at 37.

observed Simpson, he displayed signs of intoxication. Under the totality of the circumstances – including the fact that the officers **knew** Simpson lived at that address and drove a silver pick-up, and considering the neighbor's concern for Simpson's welfare - the officers had probable cause to believe Simpson was the person who was driving the vehicle at the time of the accident. It is important to emphasize that "probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Salter*, 121 A.3d 987, 994 (Pa. Super. 2015).

The cases cited by the trial court in its opinion all involve challenges to the sufficiency of the evidence, where the standard is proof beyond a reasonable doubt. *See Commonwealth v. Toland*, 995 A.2d 1242 (Pa. Super. 2010), *appeal denied*, 29 A.3d 797 (Pa. 2011); *Commonwealth v. Brotherson*, 888 A.2d 901 (Pa. Super. 2005), *appeal denied*, 899 A.2d 1121 (Pa. 2006); *Commonwealth v. Williams*, 871 A.2d 254 (Pa. Super. 2005); *Commonwealth v. Byers*, 650 A.2d 468 (Pa. Super. 1994). Indeed, if this were a trial, and Simpson was challenging the sufficiency of the evidence, we would conclude the evidence did not demonstrate, beyond a reasonable doubt, that he was the driver of the vehicle. However, presently, the Commonwealth is appealing the court's pretrial order granting suppression of the evidence based upon a lack of probable cause for Simpson's arrest. As stated above, the standard for determining probable cause is whether "the facts and circumstances within the police officer's knowledge and of which the officer

has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." **Williams**, **supra**, 941 A.2d at 27. We conclude the evidence presented at the suppression hearing met that standard.

Accordingly, we reverse the order granting Simpson's suppression motion, and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/11/18</u>