J-A06006-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHARONN KEIT WASHINGTON | : | |
| | : | |
| Appellant | : | No. 62 WDA 2025 |

Appeal from the Judgment of Sentence Entered December 16, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002620-2024

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY OLSON, J.:                    **FILED: March 25, 2026**

Appellant, Sharonn Keit Washington, appeals from the judgment of sentenced entered on December 16, 2024, following his bench trial convictions for persons not to possess a firearm and evading arrest or detention on foot.[1] We affirm.

We briefly summarize the facts and procedural history of this case as follows.  On April 3, 2024, Deputy Thomas Cramer of the Allegheny County Sherriff's Department observed a white SUV commit a traffic violation when the vehicle continued going straight instead of making a mandatory right turn as indicated by clearly marked traffic signage.[2]  N.T., 11/27/2024, at 3. Appellant was the front passenger.  Deputy Cramer smelled the odor of

---

[1]  18 Pa.C.S.A. §§ 6105 and 5104.2, respectively.

[2]   Appellant does not challenge the validity of the traffic stop.

marijuana emanating from the vehicle.  *Id.* at 4.  He asked Appellant, the driver, and a rear passenger to provide identification.  *Id.*  Appellant and the driver produced identification and there were no active arrest warrants for either of them.  *Id.*  The rear passenger, however, denied having identification and provided a false name to Deputy Cramer.  *Id.*  As a result, Deputy Cramer ordered all three occupants out of the vehicle.  *Id.*  Deputy Cramer frisked Appellant for officer safety and did not find anything on Appellant's person initially.  *Id.* Eventually, the rear passenger provided his real name, Deputy Cramer determined that there was an active warrant for his arrest, and the rear passenger was detained.  *Id.* at 5.  Deputy Cramer then asked the driver and Appellant if there was contraband in the car.  The driver replied that there was marijuana and consented to a search of her vehicle.  *Id.*  Deputy Cramer retrieved a black bag containing two bags of suspected marijuana and a digital scale from the driver's side of the vehicle.  *Id.*  Deputy Cramer asked the driver and Appellant if they were carrying contraband.  *Id.*  The driver lifted her shirt to show the officer that she did not have a weapon tucked in her waistband.  *Id.* at 6.  Deputy Cramer testified that Appellant gave verbal consent to search him.  *Id.*  When Deputy Cramer lifted Appellant's hoodie, there was a visible firearm in his waistband.  *Id.* Appellant fled on foot.  *Id.* Deputy Cramer tasered Appellant and apprehended him.  *Id.*  The Commonwealth charged Appellant with the aforementioned crimes.

Prior to trial, Appellant filed a motion to suppress the firearm recovered from his waistband during a second search.  The trial court held a suppression

- 2 -

hearing on September 23, 2024. At the suppression hearing, the Commonwealth presented the police body camera footage as recorded by Deputy Cramer. *Id.* Appellant testified that he did not consent to a second search of his person, "maintain[ing] that he told Deputy Cramer, that you already checked me, you already searched me." *Id.* at 7.

Ultimately, the trial court entered its findings of fact into the record on November 27, 2024, immediately prior to a bench trial. The trial court determined that Appellant consented to the search based upon its review of Deputy Cramer's body camera footage, which showed that Appellant stated, "you can check me, sir, I don't have nothing on me." *Id.* at 8. The trial court concluded that the suppression testimony, together with the court's observations of Deputy Cramer's body camera video, supported the finding that the second search of Appellant's person was not the product of coercion and that Appellant freely chose to consent. *Id.* at 10. Accordingly, the trial court denied suppression and proceeded directly to the bench trial. *Id.* The trial court found Appellant guilty of the two charged crimes. *Id.* at 20. On December 16, 2024, the trial court sentenced Appellant to an aggregate term of 5½ to 11 years of incarceration. This timely appeal resulted.[3]

---

[3] On January 14, 2025, Appellant filed a timely notice of appeal and, thereafter, complied timely with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 20, 2025, the trial court filed a statement in *lieu* of an opinion pursuant to Pa.R.A.P. 1925(a), "rel[ying] on its findings of facts and conclusions of law as found on pages [one] through 10 of the November 27, 2024 suppression ruling and non-jury trial transcript." Trial Cout Statement in *Lieu* of Opinion, 5/20/2025, at 3 (unnecessary capitalization omitted).

On appeal, Appellant presents the following issues for our review:

1. Whether the trial court abused its discretion and/or erred as a matter of law by denying Appellant's motion for suppression when the officer unlawfully conducted a second search of Appellant in violation of the Fourth Amendment of the United States Constitution and Article I, Section VIII of the Pennsylvania Constitution?

2. Whether the trial court abused its discretion and/or erred as a matter of law by denying Appellant's motion for suppression after finding that Appellant provided the officer consent to conduct a second search?

3. Whether the trial court abused its discretion and/or erred as a matter of law by denying Appellant's motion for suppression when Article I, Section VIII of the Pennsylvania Constitution should require that police inform individuals that they have the right to refuse consent prior to conducting a warrantless search?

Appellant's Brief at 6 (unnecessary capitalization omitted).

All three of Appellant's issues challenge the trial court's ruling on suppression and we will examine them together. First, Appellant argues that Deputy Cramer frisked him for weapons when he initially exited the vehicle in question and when he did not find any weapons, Deputy Cramer allowed Appellant to smoke a cigarette. *Id.* at 17-18. Appellant contends that "[n]early fifteen minutes after the initial frisk which yielded no weapons," he asked Appellant if there was any contraband on his person. *Id.* at 18. Appellant claims he stated, "you just checked me," but that Deputy Cramer never asked for consent to search Appellant and, instead, reached into Appellant's hoodie pocket, lifted the garment up to reveal Appellant's

waistband, while saying, "let me check your pockets real quick." ***Id.*** Appellant concedes that the "trial court listened to the [police camera] video which was [presented as] Commonwealth's Exhibit 1 [at] the suppression hearing," but argues that "[t]he trial court incorrectly interpreted what Appellant said moments before police officers searched him[.]" ***Id.*** at 19; ***see also id.*** at 20 ("[T]he record reflects that the trial court interpreted Appellant's statements in a manner not supported by the actual video and audio evidence presented at the [suppression] hearing [as] compounded by the officer's testimony, which also misstated what Appellant said during the incident. … A fair review of the video and audio demonstrates that the statements were misheard and did not provide consent for a search."); ***see also id.*** at 22 ("Upon review of Deputy Cramer's body worn camera footage, Appellant did not give consent to be searched a second time.  Appellant testified to the same.").  Appellant argues that this Court should "listen to the video and make its own assessment of what Appellant actually said." ***Id.*** at 20.  In the alternative, Appellant contends that "[s]hould [this] Court find that Appellant provided consent, the consent was not voluntarily given" because "Deputy Cramer was going to search Appellant and [] his hoodie regardless of what Appellant said." ***Id.*** at 22.  Finally, Appellant suggests that despite our Pennsylvania Supreme Court's decision in ***Commonwealth v. Cleckley***, 738 A.2d 427 (Pa. 1999) stating otherwise, "[t]he law in Pennsylvania should be that officers are required to inform individuals that they have the right to refuse consent" to search. ***Id.*** at 28-29.  Because the Pennsylvania

- 5 -

Constitution "provides greater protection than the Fourth Amendment" to the United States Constitution and the *Cleckley* decision is over 25 years old, Appellant maintains that "*Cleckley* should be overturned" and "Deputy Cramer should have informed Appellant that he could refuse consent; therefore, the evidence should [have been] suppressed." *Id.* at 29 and 33.

We adhere to the following standards of review:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the defendant prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Tillery*, 249 A.3d 278, 280-281 (Pa. Super. 2021) (citation and brackets omitted)

"We are highly deferential to the suppression court's factual findings and credibility determinations." *Commonwealth v. Carmenates*, 266 A.3d 1117, 1123 (Pa. Super. 2021) (*en banc*); *see also Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018) ("The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." (citation omitted)). "If the record supports the suppression court's findings, we may not substitute our own findings." *Id.*

Where a defendant files a motion to suppress evidence, "the Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not

obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H); *see also id.*, Comment (stating that the standard of proof is a preponderance of the evidence). ["A preponderance of the evidence is tantamount to a more likely than not inquiry." ***Commonwealth v. Anderson***, 340 A.3d 297, 308-309 (Pa. 2025) (citation, brackets, ellipses and quotation marks omitted).] The Commonwealth "satisfies its preponderance of the evidence burden if it proves to the satisfaction of the suppression court that the evidence was properly seized." ***Commonwealth v. Smith***, 304 A.3d 35, 39 (Pa. Super. 2023) (citation omitted); ***see also Anderson***, 340 A.3d at 309 ("The Commonwealth may sustain its threshold preponderance burden by means of circumstantial evidence.").

***Commonwealth v. Fulton***, 345 A.3d 352, 360–361 (Pa. Super. 2025) (original brackets omitted; footnote incorporated).

Furthermore,

"Under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, searches conducted in the absence of a search warrant are *per se* unreasonable, unless they satisfy one of the recognized exceptions to the warrant requirement." ***Commonwealth v. Hunte***, 337 A.3d 483, 498 (Pa. 2025) (citations omitted); ***see also Commonwealth v. Saunders***, 326 A.3d 888, 896 (Pa. 2024) ("Protection of reasonable expectations of privacy is the primary purpose of the prohibition against unreasonable searches and seizures." (citation omitted)). "One such exception exists when a person consents to the search." ***Hunte***, 337 A.3d at 498; ***see also Commonwealth v. Strickler***, 757 A.2d 884, 888 (Pa. 2000).

Our Supreme Court explained the consent exception in ***Commonwealth v. Valdivia***, 195 A.3d 855 (Pa. 2018):

[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. Although a warrantless, but consensual, search is constitutionally permissible, obtaining consent is an investigative tool utilized by law enforcement. It allows police to do what otherwise would be impermissible without a warrant.

- 7 -

As a consent search is in derogation of the Fourth Amendment, there are carefully demarked limitations as to what constitutes a valid consent search.

First, consent must be voluntarily given during a lawful police interaction. For a finding of voluntariness, the Commonwealth must establish that the consent given by the defendant is the product of an essentially free and unconstrained choice — not the result of duress or coercion, express or implied, or a will overborne — under the totality of the circumstances.

If consent is given voluntarily, the ensuing search must be conducted within the scope of that consent. The standard for measuring the scope of an individual's consent is one of objective reasonableness. We do not ascertain the scope of consent from the individual's subjective belief or the officer's understanding based on his or her training and experience, but based on what the typical reasonable person would have understood by the exchange between the officer and the suspect.

*Valdivia*, 195 A.3d at 868 (paragraph formatting modified).

*Id.* at 362–363 (original emphasis omitted).

Finally, this Court has stated:

"Where the underlying encounter [between the citizen and the police] is found to be lawful, voluntariness becomes the exclusive focus." [*Strickler*, 757 A.2d at 888].

As to the voluntariness of an individual's consent, we have declared:

[during the suppression hearing,] the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances. While knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Additionally, although the inquiry is an objective one, the maturity, sophistication and

mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account.

Since both the tests for voluntariness and for a seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses.

... [T]he following factors outlined [in **Strickler**] are pertinent to a determination of whether consent to search is voluntarily given: 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

**Commonwealth v. Kemp**, 961 A.2d 1247, 1261 (Pa. Super. 2008) (*en banc*) (quotations, citations, and corrections omitted), *quoting* **Strickler**, 757 A.2d at 901-902. "With regard to consent, 'voluntariness' is a question of fact to be determined from the totality of the circumstances." **Commonwealth v. Fredrick**, 230 A.3d 1263, 1267 (Pa. Super. 2020); **Schneckloth v. Bustamonte**, 412 U.S. 218, 227 (1973) ("the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances").

**Commonwealth v. Hawkins**, 257 A.3d 1, 9–10 (Pa. Super. 2020) (original footnote omitted; brackets in original). Our Supreme Court "further held in **Cleckley** that Article I, Section 8 of the Pennsylvania Constitution does not require that the Commonwealth establish a knowing and intelligent waiver of the right to refuse consent in order for the consent to be valid."

*Commonwealth v. Mack*, 796 A.2d 967, 970 (Pa. 2002); *see also Commonwealth v. Kurtz*, 172 A.3d 1153, 1161 n.6 (Pa. Super. 2017) ("In *Cleckley*, our Supreme Court held that an officer does not need to inform an arrestee of the right to refuse a warrantless search for consent to be voluntary under Pa. Const. Art. I, Section 8."), *citing* *Cleckley*, 738 A.2d at 432 (declining to reverse suppression ruling on sole basis that there was no showing that defendant was aware of right to refuse consent test). "This Court is bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court." *Commonwealth v. Slocum*, 86 A.3d 272, 278 n. 9 (Pa. Super. 2014).

Here, the suppression court initially noted that "[p]ortions of Deputy Cramer's body-worn camera footage, as [] indicated, were played at the [suppression] hearing and marked and identified as Commonwealth's Exhibit 1." N.T., 11/27/2024, at 6. The suppression court "reviewed Commonwealth's Exhibit 1 and listened to it on a number of occasions since [suppression] turn[ed] on a very dispositive point here … [as] the Commonwealth ha[d] the burden to establish that consent was the product of an essentially free and unconstrained choice, not the result of duress, coercion, or of will that was overborne in considering the totality of circumstances." *Id.* at 7-8. Ultimately, the suppression court determined that

[it was] constrained after looking at [the video footage] multiple times and in multiple ways to conclude that the Commonwealth's claim [that the search was consensual was] depicted [in] Commonwealth's Exhibit 1, in that [Appellant] said to the Deputy, "you can check me, sir, I don't have nothing on me."

*Id.* at 8 ("This is what the [c]ourt has heard[,] what [was] reviewed [and, i]n fact, both the words and body language speak to [those] fact[s.]").  The suppression court further noted that "[a]t no point during the interaction did the Deputy identify that [Appellant] must consent to the second search, that it was compulsory, or that it in any way affected his ability to ultimately leave the scene."  *Id.* at 9.  Moreover, the suppression court credited Deputy Cramer's testimony that Appellant "gave verbal consent to search his person."

*Id.* at 6.  Finally, the suppression court determined:

Under the circumstances here, and considering the facts and circumstances that were available to the Deputy at the time, clearly [police] were still investigating issues surrounding … the active Family Court warrant [issued for the rear passenger and] had seized a certain amount of suspected marijuana from the vehicle and were trying to ascertain the ownership of the vehicle. The Deputy was conducting an investigation.

[The suppression court did not] believe there [was] anything in the record, both from the testimony and/or the [c]ourt's observations o[f] Commonwealth's Exhibit 1 that indicate[d] under Pennsylvania law this was the product of a coerced action or was not a free and unrestrained choice [for Appellant] to utter those words.  The Deputy took those words and attempted to check [Appellant], as [the Deputy] indicated that [] he would[.]  Therefore, as [Appellant] is contesting the nature of the search as not being consensual and therefore in violation of both Article I, Section 4 of the United States Constitution, and Article I, Section VIII of the Pennsylvania Constitution, the motion to suppress is denied.

- 11 -

*Id.* at 10.

Based upon our standard of review and applicable law, we discern no abuse of discretion or error of law in denying suppression in light of Appellant's voluntary consent to search his person. Here, the trial court reviewed the transcript of the suppression hearing, as well as a review of the police body camera video footage as presented by the Commonwealth and admitted into evidence at the hearing. The trial court determined that Appellant said that Deputy Cramer could search, or "check," him because he did not have "anything" illegal on his person. This Court has carefully reviewed the entire certified record, including Deputy Cramer's body camera footage and his testimony regarding the encounter, and we agree with the suppression court that Appellant verbally manifested his consent to the second search. Regardless, if the video or audio footage on the recording was somehow ambiguous, we defer to the suppression court's factual findings and credibility determinations. Here, the suppression court credited Deputy Carmer's version of events and we will not usurp that finding. Additionally, when looking at the totality of the circumstances surrounding Appellant's consent, there was no excess police presence or physical police contact, aside from the initial, permissible frisk, before Appellant gave consent for the second search. Deputy Cramer did not direct Appellant's movements. The initial investigation was not coercive. In fact, Appellant concedes that he was permitted to smoke a cigarette on the side of the road, for approximately 15 minutes, while the police examined and checked occupant identification and also searched the

vehicle with the driver's permission. **See** Appellant's Brief at 17-18 ("Appellant leaned against the deputies' car while smoking a cigarette and looking at his phone as the interaction continued [for n]early fifteen (15) minutes after the initial frisk which yielded no weapons[.]"). As such, Appellant's consent was voluntarily given and suppression was unwarranted. Accordingly, Appellant's first two issues lack merit.

Finally, we reject Appellant's suggestion that police should be required to warn citizens that they have the right to refuse consent to a search. Our Supreme Court has definitively held that an officer does not need to inform an arrestee of the right to refuse a warrantless search for consent to be voluntary. **See Cleckley** **supra**. We are bound by **Cleckley** under the doctrine of *stare decisis*. Hence, Appellant is not entitled to relief on his final appellate claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/25/2026