J-A27028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
ANGELO DUNKERLY-ADAMS   :
  :
Appellant   :   No. 78 EDA 2020

Appeal from the Judgment of Sentence Entered August 23, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001077-2018

BEFORE: STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:         **FILED JULY 9, 2021**

Appellant Angelo Dunkerly-Adams appeals from the judgment of

sentence entered following his jury trial convictions for numerous sex

offenses.[1] Appellant contends the trial court erred by (1) denying his motion

to suppress because of an invalid **_Miranda_**[2] waiver; (2) erroneously ruling on

hearsay evidence; and (3) imposing mandatory court costs without conducting

an ability-to-pay hearing. Appellant also challenges the constitutionality of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Specifically, a jury convicted Appellant of multiple counts of statutory sexual assault, involuntary deviate sexual intercourse (IDSI), sexual assault, indecent assault, and corruption of minors. **_See_** 18 Pa.C.S. §§ 3122.1(b), 3123(a)(1), 3123(a)(7), 3124.1, 3126(a)(1), and 6301(a)(1)(ii), respectively.

[2] **_Miranda v. Arizona_**, 384 U.S. 436 (1966).

the lifetime registration requirements under the revised Subchapter H of the Sex Offender Registration and Notification Act[3] (SORNA II). We affirm the judgment of sentence, vacate in part the order denying Appellant's post-sentence motion to the extent the order denied relief on Appellant's SORNA claim, and remand for proceedings consistent with **Torsilieri**.

We state the facts and procedural history as set forth in the trial court's opinion:

> The offenses for which [Appellant] was convicted took place between August of 2016 and December 30, 2017.
>
> [Appellant] was arrested by the Limerick Township Police Department on December 31, 2017, and initially charged for an incident that occurred on December 30, 2017. Following an investigation, additional charges were brought against [Appellant] for incidents that occurred prior to December 30, 2017, and included other victims.
>
> In the evening of December 30, 2017, [Appellant], [Appellant's husband (Husband)], and [Husband's] extended family, attended a family birthday party. After the party, [Appellant], [Husband], [Husband's minor nephews, specifically Victim 1, Victim 2, and Victim 3,] and [Husband's adult daughter (Daughter)], returned to the home shared by [Appellant] and [Husband]. [Husband] awoke during the night to find his minor nephew, [Victim 1], performing oral sex on [Appellant].
>
> [As a result, the entire household was woken up and during the course of the evening, Victim 2 spoke with Daughter about Appellant's molestation of him. We discuss this testimony in further detail below.]

_____

[3] 42 Pa.C.S. §§ 9799.10-9799.42. SORNA is also known as Act 29. **See Commonwealth v. Torsilieri**, 232 A.3d 567, 574 (Pa. 2020).

> The police were called and arrived to the home in the early hours of December 31, 2017. On the afternoon of December 31, 2017, [Appellant waived his *Miranda* rights and] gave a statement at the Limerick Township Police Department [regarding Victim 1 only]. Following his statement, [the police filed a criminal complaint regarding Victim 1 and arrested Appellant]. As part of the police investigation, [Victim 2 and Victim 3], were interviewed and identified as additional victims.
>
> On January 15, 2018, Detective Ernie Morris of the Limerick Township Police Department visited [Appellant] at the Montgomery County Correctional Facility. . . . [At that time, Appellant waived his *Miranda* rights and provided statements regarding all three victims. We explain in further detail below.]

Trial Ct. Op., 2/12/20, at 2-4. The police subsequently filed another criminal complaint regarding all three victims on February 12, 2018. Appellant was then charged with offenses relating to all three victims. Criminal Information, 4/12/18. On February 4, 2019, Appellant filed a motion to suppress his January 15, 2018 statement to police, in which he argued that his *Miranda* waiver was invalid. Following a hearing on February 19, 2019, the suppression court denied Appellant's motion. *See* Order, 3/5/19, at 1.

On March 29, 2019, a jury found Appellant guilty of all charges against Victim 1 and Victim 2, but not guilty of the offenses against Victim 3. Prior to sentencing, the Commonwealth requested, and the trial court ordered, a sexually violent predator (SVP) hearing for Appellant. Order, 4/2/19.

Appellant filed a motion to vacate the order for an SVP hearing. Mot. to Vacate Order for a SVP Hr'g, 7/24/19. In relevant part, Appellant argued, among other things, that the registration requirements in revised Subchapter H were unconstitutionally punitive under *Commonwealth v. Muniz*, 164

A.3d 1189 (Pa. 2017). *Id.* at 4-5. Appellant also reasoned that revised Subchapter H violated his due process because it created "an irrebuttable presumption that all offenders pose[d] a high risk of future dangerousness." Brief in Support of Mot. to Vacate Order for a SVP Hr'g, 8/13/19, at 18. Appellant also referred the trial court to the then-outstanding appeal in *Torsilieri* and noted that the *Muniz* Court acknowledged studies "showing the majority of sexual offenders will not re-offend . . . ." *Id.* at 3, 19 (formatting altered and citation omitted). The Commonwealth filed a response in opposition but eventually withdrew its request to hold an SVP hearing for Appellant. N.T. Sentencing Hr'g, 8/23/19, at 3.

At the sentencing hearing, the trial court explicitly stated that it would apply revised Subchapter H. *Id.* at 24. Appellant objected as follows:

> For the record, we are objecting to the imposition of any SORNA registration requirements under Act 29. There is obviously an ongoing constitutional challenge to SORNA, Act 29, whatever we want to call it for the record, and the constitutionality under both the federal and state constitution is currently being litigated for this particular subsection in front of the State Supreme Court. I did address a number of these arguments in [Appellant's] brief in support of motion for order to -- to vacate order for SVP. And while I understand the Commonwealth has withdrawn its praecipe for SVP, the arguments that were forwarded in that brief directly go and we would rely on those arguments in our -- for our objection.

*Id.* at 26-27. The trial court immediately overruled the objection. *Id.* at 27. Appellant did not attempt to introduce any evidence regarding his due process claim. That same day, the trial court sentenced Appellant to an aggregate sentence of nine to eighteen years' imprisonment.

- 4 -

Appellant timely filed a post-sentence motion arguing that "the Act 29 sex offender registration requirements that are included as part of [Appellant's] sentence are unconstitutional." Post-Sentence Mot., 8/23/19, at 2. Appellant noted that per his objection at the sentencing hearing, "SORNA violates both the Pennsylvania and federal constitutions," and, therefore concluded "the SORNA registration aspect" of his sentence should be vacated. *Id.* at 2. On November 9, 2019, the trial court denied Appellant's post-sentence motion without a hearing.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.[4] The trial court filed a responsive Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues:

1. Did the [trial] court err in denying Appellant's motion to suppress written and oral statements where the Appellant was subjected to custodial interrogation at the Montgomery County Correctional Facility where he was promised a phone call with his husband after successful interview, at which point the Appellant's alleged waiver of constitutional rights was not voluntarily, knowingly and intelligently given?

2. Did the [trial] court err by admitting hearsay evidence elicited during the trial testimony based on misunderstandings of law pertaining to what constitutes hearsay, exceptions to rules

---

[4] Appellant raised several other issues that he does not argue in his appellate brief, and therefore, they are waived. *See Commonwealth v. Felder*, 247 A.3d 14, 20 (Pa. Super. 2021) (stating, "an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted and formatting altered)).

governing the admissibility of hearsay, and qualifying out-of-court statements as admissible non-hearsay statements?

3. Did the [trial] court err in imposing costs of prosecution and a supervision fee without taking into account Appellant's finances?

4. Are Pennsylvania's lifetime sex offender registration requirements, as set forth under Act 29, unconstitutional, and, if not, should not Subsection I apply where the allegations span both Subsection I and Subsection H and the fact finder made no determination regarding the date of the offense?

Appellant's Brief at v-vi.

## **Suppression Claim**

In his first issue, Appellant argues that the trial court erred in denying his motion to suppress. Specifically, he argues that he did not knowingly or voluntarily waive his *Miranda* rights before providing the January 15, 2018 statement to police.[5]

By way of background to this claim, Appellant provided an initial statement to police on December 31, 2017.[6] N.T. Suppression Hr'g, 2/19/19,

_____

[5] Although all parties involved refer to a single *Miranda* waiver and a single police statement, there were actually two *Miranda* waivers and two police statements on January 15, 2018: the initial statement regarding Victim 2 and Victim 3, and a second statement regarding Victim 1. For the sake of consistency with the parties' arguments and the record, we continue to refer to both waivers and both statements in the singular.

[6] "Our scope of review of an order denying a pretrial motion to suppress is limited to the evidence presented at the suppression hearing." ***Commonwealth v. Shreffler***, 201 A.3d 757, 758 n.3 (Pa. Super. 2018) (citation omitted). Further, Appellant did not challenge the December 31, 2017 statement in his motion to suppress, but we are referencing it to provide necessary background context.

at 25; ***accord*** Suppress. Ex. C-2. Appellant's statement pertained exclusively to Victim 1, who was the only victim known to police at that time. N.T. Suppression Hr'g at 25. Based on the information provided in Appellant's statement, Appellant was taken into custody. N.T. Suppress. Hr'g at 125. On January 8, 2018, the police interviewed all three victims. ***Id.*** at 46; ***see*** Suppress. Ex. D-1.

On January 15, 2018, Detective Ernie Morris interviewed Appellant at the county jail.[7] N.T. Suppression Hr'g at 47-48. The suppression court summarized the interview as follows:

> Detective Morris began the interview by first reviewing the ***Miranda*** waiver form with [Appellant. Appellant] signed the form, waiving his rights. Prior to asking any substantive questions,

---

[7] On this record, the police did not, nor is there any allegation that the police did not, fail to deliberately disclose previously filed criminal charges at Appellant's interrogation. ***See Commonwealth v. Rawls***, 237 A.3d 976 (Pa. 2020) (order) (granting petition for allowance of appeal on the issue of whether "police, to protect a person's sixth amendment rights, must do more than administer ***Miranda*** warnings when the person is subject to police custodial interrogation and police deliberately fail to disclose that criminal charges have already been filed"). As noted above, the Commonwealth filed its information **after** the custodial interrogation.

Detective Morris testified that he was dressed down and did not wear anything police related, including a firearm. N.T. Suppress Hr'g at 47-48. Detective Morris explained that inmate interviews at the county jail occur in a roughly six-foot by sixteen-foot multipurpose room with a desk, two chairs, a video screen, and a computer. ***Id.*** at 49. The room has a window with blinds and a door with no lock that Detective Morris usually closes for privacy. ***Id.*** Detective Morris testified that it was just him and Appellant present. ***Id.*** at 51. Appellant was not cuffed or restrained and was just sitting in one of the chairs. ***Id.*** at 61. Detective Morris noted that Appellant was permitted to eat, drink, or use the bathroom, and Appellant left the room to use the bathroom twice. ***Id.*** at 61-62.

Detective Morris again confirmed with [Appellant] that he understood and waived his *Miranda* rights, that it was [Appellant's] choice to speak with Morris, that nothing was being offered to induce his statement, and that he waived his right to speak with an attorney. Once [Appellant] had answered each question in the affirmative, Detective Morris began his questioning about [Victim 2 and Victim 3]. At the conclusion of this portion of the interview, [Appellant] read over and corrected any errors in the statement. [Appellant] placed his initials next to any corrections made, and signed the bottom of each page, indicating that it had been read and reviewed.

After [Appellant] had concluded reviewing his statement regarding the possible new victims, Detective Morris inquired if [Appellant] would be willing to once again waive his *Miranda* rights and answer questions about the existing charges and [Victim 1]. [Appellant] and Detective Morris again reviewed the *Miranda* waiver form, and it was signed by [Appellant]. Detective Morris confirmed that [Appellant] was once more acting on his own free will and that it was his desire to waive his right to an attorney. [Appellant] again confirmed that nothing was offered to induce him to make this statement, and that no one was forcing him to answer the questions being asked. At the conclusion of the interview, [Appellant] reviewed and corrected this second statement, initialing after each change, and signing the bottom of each page.

Order, 3/7/19, at 2-3. Subsequently, Detective Morris allowed Appellant to call Husband. N.T. Suppression. Hr'g at 108. As a result of the interview, the Commonwealth charged Appellant with offenses against Victim 2 and Victim 3.

On February 4, 2019, Appellant filed a motion to suppress only his January 15, 2018 police statement. Mot. to Suppress, 2/4/19, at ¶ 2. On February 19, 2019, the trial court held a suppression hearing. In relevant part, Detective Morris denied that (1) Appellant asked him to contact Appellant's attorney and (2) denied there was any arrangement to have

Appellant call Husband in exchange for speaking to Detective Morris. N.T. Suppression Hr'g at 107, 110. Detective Morris maintained that it was only at the end of the interview, while Appellant was reviewing his statement, that Appellant indicated he wanted to call Husband. *Id.* at 110. In contrast, Appellant testified to his version of events, which included allegations that Detective Morris made deceptive statements and disregarded Appellant's repeated assertions that he would not speak without a lawyer present. *Id.* at 132-33.

On March 7, 2019, the suppression court denied Appellant's motion. Order, 3/7/19, at 1. The suppression court "credit[ed Detective Morris's] testimony in establishing the factual basis for the *Miranda* waiver[s]." *Id.* at 1. The suppression court concluded that Appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights for the January 15, 2018 statement. *Id.* at 3-4.

On appeal, Appellant reiterates his claim that his *Miranda* waiver on January 15, 2018, was invalid. Appellant's Brief at 15. In support, he alleges that he was housed in the medical ward until shortly before the interrogation and therefore was under high stress. *Id.* at 15. He alleges that he signed the *Miranda* waiver after the police questioned him for several hours. *Id.* Appellant argues that the interview constituted a custodial interrogation, which was improper because he notified Detective Morris that he was represented by counsel. *Id.* at 15-22. Further, Appellant alleges that

Detective Morris manipulated him into answering questions in exchange for Appellant being able to call Husband and took advantage of his "helplessness and fragile mental state." *Id.* at 24. Appellant argues that, based on the totality of the circumstances, he was incapable of "understanding his rights or protecting his interests." *Id.* at 25. Therefore, Appellant concludes that his *Miranda* waiver was invalid, and the trial court erred by denying his motion to suppress the January 15, 2018 statement.[8]

We review an order denying a motion to suppress as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Gray*, 211 A.3d 1253, 1260 (Pa. Super. 2019) (citation omitted). Additionally, "[i]t is within the suppression court's sole province as

---

[8] Appellant cites to the **trial** transcript in support of his argument rather than the **suppression** transcript. *See Shreffler*, 201 A.3d at 758 n.3; *accord* Commonwealth's Brief at 14 n.2.

factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Byrd***, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted).

It is well settled that when an individual is "both taken into custody and subjected to interrogation," that individual is entitled to ***Miranda*** warnings. ***Commonwealth v. Yandamuri***, 159 A.3d 503, 520 (Pa. 2017). Specifically, our Supreme Court has explained:

> The United States Supreme Court has held that, before law enforcement officers question an individual who has been in taken into custody or has been deprived of his freedom in any significant way, the officers must first warn the individual that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed. However, these special procedural safeguards are required only where a suspect is both taken into custody and subjected to interrogation. In determining whether a suspect is in custody, two discrete inquiries are essential: (1) an examination of the circumstances surrounding the interrogation; and (2) a determination of whether, given those circumstances, would a reasonable person have felt that he or she was at liberty to terminate the interrogation and leave. As noted, a person is in custody for ***Miranda*** purposes only when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation. . . . Whether an encounter is deemed "custodial" must be determined by examining the totality of the circumstances.

***Id.*** at 520-21 (citations omitted).

Here, to the extent Appellant argues that he was in custody and subjected to an interrogation, we agree. ***See id.*** Appellant was in county jail

- 11 -

at the time of his interview with Detective Morris and a reasonable person in Appellant's position would not "have felt that he was at liberty to terminate the interrogation and leave." *See id.* at 521. Therefore, he was entitled to *Miranda* warnings. *See id.*

In reviewing Appellant's *Miranda* waiver claim, we are guided by the following principles:

> When a defendant challenges the admission of a statement made during a custodial interrogation, the Commonwealth bears the burden to prove by a preponderance of the evidence that the defendant's *Miranda* waiver was knowing, intelligent, and voluntary. We engage in a two-part inquiry:
>
> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived.
>
> An examination of the totality of the circumstances includes a consideration of (1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Commonwealth v. Smith*, 210 A.3d 1050, 1058 (Pa. Super. 2019) (citations omitted and formatting altered). "This Court has applied the totality of circumstances test with no less force or vigor in cases where there was a claim that a promise or inducement rendered the confession involuntary."

- 12 -

*Commonwealth v. Templin*, 795 A.2d 959, 964 (Pa. 2002) (citation omitted).

> Further, with respect to improper inducement of *Miranda* waiver:
>
> Promises of benefits or special considerations, however benign in intent, comprise the sort of persuasions and trickery which easily can mislead suspects into giving confessions. The process of rendering *Miranda* warnings should proceed freely without any intruding frustration by the police. Only in that fashion can we trust the validity of subsequent admissions, for if the initial employment of *Miranda* is exploited illegally, succeeding inculpatory declarations are compromised. Misleading statements and promises by the police choke off the legal process at the very moment which *Miranda* was designed to protect.

*Commonwealth v. Lukach*, 195 A.3d 176, 192 (Pa. 2018) (citation omitted).

Instantly, Appellant executed written *Miranda* waiver forms in which he acknowledged that he was promised nothing in exchange for his statement. Order, 3/7/19, at 2-3. Further, the suppression court explicitly credited Detective Morris's testimony regarding the circumstances of Appellant's *Miranda* waiver and rejected Appellant's version of events. *Id.* at 1. Specifically, the suppression court agreed with Detective Morris's testimony that Appellant was not forced to answer any questions and instead voluntarily provided answers throughout the interview. *Id.*; *see* N.T. Suppression Hr'g at 64-65. Further, Detective Morris repeatedly denied promising that Appellant could call Husband if Appellant spoke with Detective Morris. *See* N.T. Suppression Hr'g at 110. Rather, the detective testified, it was only at the end of the interview, when Appellant was reviewing his statement, that Appellant asked to call Husband. *See id.* We are bound by the suppression

court's credibility determinations, which are supported by the record. **See**

**Byrd**, 185 A.3d at 1019.

Further, under the totality of these circumstances, we agree with the trial court that Appellant's **Miranda** waiver was proper. **See Lukach**, 195 A.3d at 192; **Smith**, 210 A.3 at 1058. Therefore, Appellant is not entitled to relief.

### Hearsay - Victim 2's Testimony

Appellant next claims that the trial court erred by allowing hearsay testimony from Victim 2. By way of background to this issue, we reiterate that the three victims and Daughter stayed overnight at Appellant and Husband's home following a family party on December 30, 2017. **See generally** N.T. Trial, 3/26/19, at 200. That night, Husband woke up and found Victim 1 performing oral sex on Appellant, which led to a commotion that woke up everyone in the house, including Victim 2 and Daughter. **Id.** at 142, 219-22.

At trial, Victim 2 began by testifying that he was sexually abused by Appellant in August 2016. **See** N.T. Trial, 3/26/19, at 55. The Commonwealth then asked Victim 2 about the events that occurred on December 30, 2017.

*Id.* at 65, 72. After Victim 2 testified that he spoke with Daughter on the night in question, the following exchange occurred:[9]

> [The Commonwealth]: And did you tell [Daughter] what had happened between you and [Appellant] back in August about a year and a half earlier?
>
> [Appellant's Counsel]: Objection.
>
>                               \*      \*      \*
>
> THE COURT: What is the objection?
>
> [Appellant's Counsel]: Hearsay.
>
> THE COURT: No, he is asking if he told her.
>
> [Appellant's Counsel]: Correct. It is an out of court statement offered for the truth of the matter. I understand he would have been the declarant but he was still out of court.
>
> THE COURT: Overruled. He can answer.
>
> [Commonwealth]. What was it that you told [Daughter]?
>
> [Victim 2]. I told [Daughter] what happened between me and [Appellant].

N.T. Trial, 3/26/19, at 72-73.

On appeal, Appellant argues that Victim 2's "testimony that he told" Daughter about Appellant's molestation "showed no relevant, substantive purpose beyond proving the truth of the matter asserted." Appellant's Brief

---

[9] The record does not establish exactly what Daughter asked Victim 2. ***See generally*** N.T. Trial, 3/26/19, at 72, 146 (referencing the exchange between Daughter and Victim 2 as a "conversation").

at 27. In Appellant's view, it did "not support any other aspect of the case but rather was used as another opportunity for" Victim 2 to accuse Appellant. *Id.* Appellant asserts that the testimony was not about Victim 2's "own experience, which he had testified to previously, but rather the chaos that occurred in the house on the night [Victim 1] was found performing oral sex on Appellant." *Id.* at 27-28. Appellant concludes:

> The Commonwealth offered no non-hearsay reason to elicit this testimony and the court was seemingly blinded by the basis that this particular declarant was testifying to what he himself had declared. The fact that [Victim 2] was testifying to a statement that he himself made out of court is irrelevant when the Commonwealth cannot and did not proffer an aspect of the case that this specific statement supported; rather, this was a manipulative attempt to provide substantive evidence of Appellant's guilt, *i.e.*, a statement offered for the truth of the matter asserted.

*Id.* at 28-29 (formatting altered).

The Commonwealth counters that Victim 2's testimony established his state of mind in disclosing Appellant's sexual abuse. Commonwealth's Brief at 21-22. Alternatively, the Commonwealth argues that any error in the admission of Victim 2's testimony was harmless since Victim 2 "had already testified, in detail, as to the sexual abuse [Appellant] committed against him."[10] *Id.* at 22.

_____

[10] Both parties agree that the assertion at issue is Victim 2's testimony that Appellant molested Victim 2, and not that Victim 2 spoke with Daughter. *See* Appellant's Brief at 27; Commonwealth's Brief at 22.

- 16 -

In reviewing evidentiary rulings, our standard of review is as follows:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.  Thus our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Bond*, 190 A.3d 664, 667 (Pa. Super. 2018).  We may affirm on any basis.  *See Commonwealth v. Clouser*, 998 A.2d 656, 661 n.3 (Pa. Super. 2010) (citation omitted).

Pennsylvania Rule of Evidence 801 follows:

**(a) Statement.** "Statement" means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.

**(b) Declarant.** "Declarant" means the person who made the statement.

**(c) Hearsay.** "Hearsay" means a statement that

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801.[11]

---

[11] Rule 803(3) defines the "state of mind" exception as follows: "A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the
*(Footnote Continued Next Page)*

- 17 -

An error is not harmful or prejudicial, *i.e.*, is "harmless error," when the Commonwealth proves:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Burno***, 154 A.3d 764, 796 (Pa. 2017) (citation omitted). "[C]umulative evidence is additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence." ***Commonwealth v. G.D.M.***, 926 A.2d 984, 989 (Pa. Super. 2007) (citation omitted and formatting altered). "Evidence that bolsters, or strengthens, existing evidence is not cumulative evidence, but rather is corroborative evidence." ***Id.*** (citation omitted).

Here, we agree with Appellant that Victim 2 testified about an out-of-court statement for the truth of the matter asserted, *i.e.*, Appellant's molestation of Victim 2. ***See*** N.T. Trial, 3/26/19, at 72-73. In other words, Victim 2 told Daughter about Appellant's molestation of him in August 2016. ***See id.*** However, Victim 2 had previously testified about Appellant's molestation without objection. ***See, e.g.***, N.T. Trial, 3/26/19, at 55. It follows

---

fact remembered or believed unless it relates to the validity or terms of the declarant's will." Pa.R.E. 803(3).

that Victim 2's testimony to Daughter, although erroneously admitted by the trial court, was cumulative of Victim 2's prior untainted evidence of Appellant's molestation. **See Burno**, 154 A.3d at 796; **G.D.M.**, 926 A.2d at 989. Therefore, although the trial court erred in admitting this evidence, that error was harmless. **See Bond**, 190 A.3d at 667. Accordingly, Appellant is not entitled to relief. **See id.**; **Clouser**, 998 A.2d at 661 n.3.

## Hearsay Issue - Victim 2's Mother

Appellant also argues that the trial court erroneously allowed hearsay testimony from Victim 2's Mother.

By way of background to this claim, we note that after Victim 2 testified at trial, Victim 2's Mother testified about how she learned of Appellant's abuse of the victims. Victim 2's Mother stated that on December 31, 2017, she received a call from Husband, who asked her to come to their home. **See** N.T. Trial, 3/26/19, at 112. Victim 2's Mother stated that when she arrived, several members of her extended family were present. **See id.** at 114.

The Commonwealth then asked Victim 2's Mother what her extended family said:

> [Commonwealth]: What was the nature of what it was that they told you?
>
> [Appellant's counsel]: Objection.
>
> [Commonwealth]: Honestly, Judge, it goes to explaining her demeanor when she talked to [Victim 2] upstairs a few moments later.
>
> THE COURT: That is not an exception to hearsay.

- 19 -

[Commonwealth]: The effect on the listener, it is an exception.

THE COURT: It is not coming for the truth, it is coming for the effect on her?

[Commonwealth]: Yes, sir.

THE COURT: All right. Overruled.

[Commonwealth]: What is the general nature of what they told you when you sat down at the table when you arrived at the house?

[Victim 2's Mother]: They told me that [Victim 2] was molested too.

[Commonwealth]: Okay. Did you go upstairs and talk to [Victim 2] at that point?

[Victim 2's Mother]: I ran upstairs to talk to [Victim 2].

*Id.* at 114-15.

On appeal, Appellant argues:

While [Victim 2's Mother] was undoubtedly emotionally impacted by the disturbing allegations involving her children, the statement [by the extended family of Victim 2's Mother that Victim 2 was molested] did not have an [e]ffect on her as a listener for non-hearsay purposes. It did not explain or motivate her actions. It did not impact or influence how she behaved. It did not change or alter her response in any way. There was no clear, defined effect, only a statement offered to the trial court for the truth of the matter asserted—that [Victim 2], like [Victim 1], was molested by Appellant. The trial court's decision to overrule counsel's objection and make this statement admissible was an abuse of discretion and a prejudicial error.

Appellant's Brief at 31-32.

The Commonwealth responds that "[b]ecause the statement was admitted to show the effect on [Victim 2's Mother], it was non-hearsay and

admissible." Commonwealth's Brief at 23. Further, the Commonwealth argues that "[i]n the alternative, its admission was harmless error because any prejudice was *de minimis* since [Victim 2] had already testified, in detail, about the sexual abuse [Appellant] committed against him." ***Id.*** at 23-24.

"An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement." ***Commonwealth v. Busanet***, 54 A.3d 35, 56 (Pa. 2012). "Thus, any out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay." ***Commonwealth v. Johnson***, 42 A.3d 1017, 1035 (Pa. 2012) (citation omitted and formatting altered). A common example involves a hearsay objection to testimony by a police officer about a radio or dispatch call that prompted the officer's trip to the crime scene. ***See, e.g.***, ***Commonwealth v. Goldman***, --- A.3d ---, 2021 WL 1940549 at *8 (Pa. Super. filed May 14, 2021) (explaining that the officer's testimony as to dispatch call and "information conveyed by witnesses" was not hearsay as it explained the officer's course of conduct).

Here, the trial court reasoned that the statement was not offered into evidence to prove the truth of the matter asserted. ***See*** Trial Ct. Op. at 11; Pa.R.E. 801. Based on our review of the record, we discern no abuse of discretion by the trial court. ***See Bond***, 190 A.3d at 667. The instant statement, made by extended family members to Victim 2's Mother, were offered to explain her course of conduct, *i.e.*, her running upstairs to speak

with Victim 2. **See Goldman**, 2021 WL 1940549 at *9. Further, even if the trial court erred, Victim 2 had previously testified about Appellant's molestation. **See, e.g.**, N.T. Trial, 3/26/19, at 55. Therefore, the statement was cumulative of Victim 2's own direct testimony concerning Appellant's crimes. **See Burno**, 154 A.3d at 796; **G.D.M.**, 926 A.2d at 989. Accordingly, Appellant is not entitled to relief. **See Bond**, 190 A.3d at 667.

## Hearsay Issue - Appellant's Mother

Appellant also argues that the trial court erred in excluding non-hearsay testimony from his mother (Appellant's Mother). Appellant's Brief at 32. At trial, Appellant's Mother testified that she and her husband went to Appellant's home after she received a phone call from Husband about Appellant's arrest. **See** N.T. Trial, 3/26/19, at 251; N.T. Trial, 3/27/19, at 249. Appellant's Mother stated that, when she arrived at the home, several family members were present in the kitchen. **See** N.T. Trial, 3/27/19, at 249-50.[12] When counsel asked Appellant's Mother "what was being discussed" by the family members, the Commonwealth objected on the basis of hearsay. **Id.** at 251.

A lengthy sidebar ensued, during which the trial court ruled that Appellant's Mother could only speak in generalities and could not testify regarding any specific statements made by an individual. **See id.** at 255. After further argument at sidebar, Appellant's counsel asked Appellant's

---

[12] Victim 2's Mother previously testified at trial earlier that day as to who was present at the meeting and the topic of discussion. N.T. Trial, 3/26/19, at 114.

Mother "when you were in the kitchen and speaking generally, what was being discussed?" Appellant's Mother responded that "The discussion that was being discussed was around the events that they were saying happened." *Id.* at 258.

On appeal, Appellant argues that the trial court erred by not permitting Appellant's Mother to testify "**without** being limited to generalizations." Appellant's Brief at 32 (emphasis added). Appellant explains that Appellant's Mother's testimony "as to what was being discussed when she arrived at Appellant's home on December 31, 2017, was not going to be offered for the truth of the matter asserted but rather to establish what was said and who the players at the table were." *Id.*

Instantly, our review of the record confirms that, at the time of the Commonwealth's objection, Appellant's Mother had previously identified the people present. *See* N.T. Trial, 3/27/19, at 249-50. Victim 2's Mother had also testified about who was present at the meeting and the topic of discussion. *See* N.T. Trial, 3/26/19, at 113-15. Because Appellant's Mother's testimony would have established "what was said and who the players at the table were," Appellant's Brief at 32, it would have been substantially similar to and cumulative of previously admitted testimony. *See Burno*, 154 A.3d at 796; *G.D.M.*, 926 A.2d at 989. Therefore, the trial court did not err by limiting Appellant's Mother's testimony. *See Burno*, 154 A.3d at 796. For these reasons, Appellant is due no relief.

### Costs Issue

Appellant next argues that the trial court failed to determine whether Appellant could pay mandatory court costs. Appellant's Brief at 34 (citing 18 P.S. § 11.1102(c), which addresses mandatory monthly supervision costs). Appellant notes that the issue was then pending before this Court in **Commonwealth v. Lopez**, 248 A.3d 589 (Pa. Super. 2021) (*en banc*), and maintains that the trial court abused its discretion by imposing a mandatory court fee without considering Appellant's financial ability. Appellant's Brief at 37. In Appellant's view, Pa.R.Crim.P. 706(C) requires an ability-to-pay determination. **See id.** at 35.

This Court has held that a claim contesting the authority of the sentencing court to impose costs and fees constitutes a non-waivable challenge to the legality of the sentence. **Commonwealth v. Childs**, 63 A.3d 323, 325 (Pa. Super. 2013). "A claim that the trial court imposed an illegal sentence is a question of law and, as such, our scope of review is plenary and our standard of review is *de novo*." **Id.** (citation omitted).

In **Lopez**, an *en banc* panel of this Court held that "while a trial court has the discretion to hold an ability-to-pay hearing at sentencing, Rule 706(C) only requires the court to hold such a hearing when a defendant faces incarceration for failure to pay [mandatory] court costs previously imposed on him." **Lopez**, 248 A.3d at 590. In **Lopez**, the trial court revoked the defendant's probation. **Id.** at 591. At resentencing, the defendant requested

that the trial court conduct an ability-to-pay hearing prior to imposing mandatory court costs. *Id.* After the trial court denied the defendant's request to hold an ability-to-pay hearing and imposed mandatory court costs, the defendant appealed. *Id.*

On appeal, this Court rejected the defendant's argument that Rule 706(C) required the trial court to conduct an ability-to-pay hearing before imposing court costs. *Id.* at 595. Further, the *Lopez* Court concluded that

> the trial court did not err in denying [the defendant's] motion for [an] ability-to-pay hearing. Although the [trial] court had the discretion to consider that motion at sentencing, it was not required to do so by Rule 706 because [the defendant] had not yet been threatened with incarceration as a result of a default. Should that occur, [the defendant] will be entitled to an ability-to-pay hearing pursuant to Rule 706 at that time.

*Id.* at 595-96 (formatting altered).

Here, the record supports Appellant's claim that the trial court did not make a determination concerning Appellant's ability to pay. *See* N.T. Sentencing Hr'g, 8/23/19, at 30. However, it is undisputed that Appellant is not facing incarceration for failing to pay previously imposed mandatory court costs. Therefore, consistent with *Lopez*, the trial court did not abuse its discretion or commit error when it assessed mandatory court costs without holding an ability-to-pay hearing. *See Lopez*, 248 A.3d at 595-96. Accordingly, Appellant is due no relief on this issue.

**SORNA Issue**

In his final claim, Appellant contends that SORNA II's lifetime registration requirements are unconstitutional based on *Muniz*. Appellant's Brief at 43. In Appellant's view, the revised Subchapter H is legally equivalent to the version of SORNA that the *Muniz* Court held as unconstitutional. *Id.* at 45-49. Further, Appellant argues that Act 29 is punitive and violates his constitutional right to reputation because "it creates an irrebuttable presumption that all offenders pose a high risk of future dangerousness." *Id.* at 53-58.

In *Torsilieri*, our Supreme Court addressed Subchapter H, vacated a trial court's order finding it unconstitutional, and remanded the matter to the trial court for further consideration. *Torsilieri*, 232 A.3d at 572. In that case, the petitioner presented studies challenging the General Assembly's policy finding that sex offenders pose a high risk of committing additional sexual offenses and asserted that the irrebuttable presumption of a high risk of recidivism violated due process. *Id.* at 574.

The *Torsilieri* Court declined to reach the constitutional challenge raised by the petitioner and remanded the case for further development of the record to "allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting offenders' constitutional rights." *Id.* at 596 (footnote omitted). The Court emphasized that "the wisdom of a public policy is one for the legislature, and the General

Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements." *Id.* (citation omitted). Nevertheless, the Court also stressed that it would "not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights." *Id.*

More recently, in *Commonwealth v. Asher*, 244 A.3d 27 (Pa. Super. 2020), the petitioner raised a similar claim challenging Subchapter H. *See Asher*, 244 A.3d at 28-29. Although the petitioner preserved his issue in a post-sentence motion, the trial court did not hold an evidentiary hearing. *See id.* at 32-33. Because there was no evidentiary hearing, the petitioner did not have an opportunity to have relevant research or studies admitted into evidence. *See id.* On appeal, this Court relied on *Torsilieri* to conclude that because there was no factual record on which to address the petitioner's claim, remand was necessary. *See id.* at 33. Specifically, the *Asher* Court explained that "although [the petitioner] properly preserved his challenges at sentencing and in post-sentence motions, there is no factual record. Therefore, in accordance with *Torsilieri*, we vacate and remand for a hearing at which the parties can present evidence for and against the relevant legislative determinations discussed above." *Id.*

Here, like in *Asher*, Appellant properly preserved his Subchapter H claim at sentencing and in his post-sentence motion, but the court did not

hold a hearing. *See id.* We add that Appellant was aware of the studies in *Muniz*, which he cited in his motion to vacate the order for a SVP hearing. *See* Brief in Support of Mot. to Vacate Order for a SVP Hr'g at 19. Therefore, because there is no factual record on which we can evaluate Appellant's claim, we vacate the order denying post-sentence motion in part and remand for a hearing in accordance with *Torsilieri* and *Asher*. *See Torsilieri*, 232 A.3d at 596; *Asher*, 244 A.3d at 31-33.

Judgment of sentence affirmed. Order denying post-sentence motion vacated in part to the extent the trial court denied relief on Appellant's SORNA claim. Case remanded for proceedings consistent with *Torsilieri*. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/9/2021